UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-406-GWU

HAROLD DAY,                                                           PLAINTIFF,

VS.                      **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                 DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI).  The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled.  If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)?  If yes, proceed to Step 3.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities?  If yes, proceed to Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520©), 404.1521, 416.920©), 461.921.

1

    4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

    5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

    6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

    7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

06-406 Day

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Harold Day, was awarded Child's SSI benefits in 1993. (Tr. 13). He attained his 18th birthday on August 15, 2003 (Tr. 572) and was notified that his benefits would cease after March, 2004 (Tr. 13). His claim then became subject to a new redetermination under adult standards for disability, using the rules for determining initial eligibility, rather than any medical improvement standard. 20 C.F.R § 416.987 (2006). After several administrative appeals and denials, an Administrative Law Judge (ALJ) determined that Mr. Day had a "severe" impairment consisting of mild mental retardation, but did not meet the Commissioner's Listing of Impairment 12.05. (Tr. 15).[1] The ALJ determined that Mr. Day had no exertional

---

[1] The relevant portions of LOI 12.05 state that:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR

7

06-406 Day

limitations and was limited to simple, routine job tasks. (Tr. 17). The ALJ then applied Rule 204.00 of the Commissioner's Medical-Vocational Guidelines to determine that the plaintiff was not disabled. (Tr. 19). The Appeals Council declined to review, and this action followed.

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff testified that he had received Bs and Cs in high school, but was in Special Education classes, and had failed the oral driver's license test on several occasions. (Tr. 574-5). At the time of the administrative hearing on February 27, 2007, he was attending carpentry classes at vocational school and was scheduled to complete his course in May. (Tr. 576). However, he sometimes had to have help

---

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

OR

D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

   1. Marked restriction of activities of daily living; or
   2. Marked difficulties in maintaining social functioning; or
   3. Marked difficulties in maintaining concentration, persistence, or pace; or
   4. Repeated episodes os decompensation, each of extended duration.

06-406 Day

in measuring. (Tr. 577). He was receiving treatments for headaches and had recently had an MRI, but did not know the results. (Tr. 579-80). Although he complained of experiencing headaches almost every week, he had only missed classes about six times in the past nine months. (Tr. 582-3). He was also seeing a counselor at the Kentucky River Community Care (KRCC) mental health clinic, where he talked about his problems with forgetting things. (Tr. 584). He had previously had a problem with seizures, but the last one had occurred three or four years earlier. (Tr. 585).

The various psychological examinations contained in the transcript reflect three IQ tests before the age of 18, all of which showed scores below 70, although some were considered to be of questionable validity. (Tr. 53, 198, 273). Achievement testing at the age of 17 showed "broad reading" and "broad math" abilities at approximately the third grade level. (Tr. 354).

IQ testing after the age of 18 included a November 20, 2003 evaluation by Mr. Phil Pack, a licensed psychologist, who reviewed some previous records. (Tr. 444). The plaintiff obtained a verbal IQ score of 64, a performance score of 60, and a full scale IQ score of 59, but Mr. Pack noted that he tended to give up quickly if he did not immediately know the answers, and the scores might be a slight underestimation of his general abilities. (Tr. 447). The Rey 15 Item Memory Test indicated malingering. (Tr. 448). Mr. Pack diagnosed "rule out" mild mental retardation versus borderline intellectual functioning and "rule out" malingering. (Id.).

06-406 Day

A state agency psychologist, Dr. Laura Cutler, reviewed the evidence at this point and concluded that the plaintiff did have mental retardation under LOI 12.05, but did not meet the "B" criteria of the Listing. (Tr. 450-62). She noted that teacher evaluations indicated cognitive limitations but no significant deficits in attention, relating to others, or self-care skills. (Tr. 462). She felt that Mr. Day was able to complete simple tasks in a routine environment not requiring academic skills. (Id.). Another state agency psychologist, Dr. Jane F. Brake, agreed with this assessment. (Tr. 462-80).

Subsequently, the plaintiff underwent a psychological evaluation on referral from KRCC. The evaluation was conducted by M. Beth Morgan, who was described as a "licensed psychological associate, psychology intern," and supervised by Vincent Dummer, Psy.D. The written report shows a full scale IQ of 63, a verbal IQ of 69, and a performance IQ of 62, and was said to be the result of good effort and representative of the plaintiff's abilities. (Tr. 504).[2] Reading was at the fourth grade level and spelling was at the second grade level. (Tr. 505). The impression was also given of a schizoid personality disorder based on some of the plaintiff's statements. (Id.). A Global Assessment of Functioning (GAF) score of 55 was given, equating to "moderate" difficulty in social, occupational, or school functioning.

---

[2]A handwritten note by Ms. Morgan states, however, that the client appeared "marginally motivated." (Tr. 506). In either case, the ALJ would appear to have given the plaintiff the benefit of the doubt in finding that he was functioning in the mildly mentally retarded range.

<u>Diagnostic and Statistical Manual of Mental Disorders</u> (Fourth Edition-Text Revision) (DSM-IV-TR), p. 34.

Despite the psychological evaluation, the plaintiff's treating psychiatrist at KRCC did not diagnose a schizoid personality disorder, although his assessment did include "personality change after head injury," depression, and an intermittent explosive disorder. (Tr. 502). However, he assigned a GAF of 70, reflecting only mild symptoms. Subsequently, the plaintiff reported that the medication he had been prescribed, including Paxil and Depakote, had caused improvement in his mood, and he was not having any seizures or explosive episodes. (Tr. 491-8). Treatment notes from 2005 showed that the plaintiff had an euthymic mood, reported that his medications were helping, and he also began attending vocational school. (Tr. 552, 556, 558). At the time of the most recent KRCC note, December 30, 2005, the plaintiff was said to be calm, cooperative, and friendly, and reported things were "going good." (Tr. 550).

Physically, the plaintiff underwent a consultative examination by Dr. Monte Edward Martin on March 19, 2004, at which time his complaints were of hip/back pain and headaches every day. (Tr. 486-7). Dr. Martin's physical examination was normal, however, and he specifically found no limitations or abnormalities. (Tr. 488-9).

The plaintiff was evaluated by family nurse practitioners at Christian Health Care for some transient conditions such as conjunctivitis and allergies (e.g., Tr. 535-

6), but also complained of migraines (e.g., Tr. 542-3). A CT scan of the head was normal. (Tr. 544). The plaintiff was referred to the University of Kentucky Medical Center for a neurology consultation, and, although the examination including an MRI of the head, was unremarkable, the physicians prescribed Elavil and Aleve, and the plaintiff reported that he felt "much better." (Tr. 547-9). No functional restrictions were suggested. The plaintiff again complained of headaches to a local physician in February, 2006 but again the examination was normal, and the physician indicated that he was considering a diagnosis of "<u>possible</u> chronic recurrent migraine headache." (Tr. 567-9) (emphasis added).

      Although the plaintiff makes a general argument that he meets LOI 12.05, substantial evidence supports a finding that he did not meet any portion of the Listing. He did not meet LOI 12.05B because his full scale IQ score of 59, obtained by Mr. Pack, was of questionable validity. He did not meet LOI 12.05C despite valid IQ scores below 70, because he failed to prove that he had "a physical or other mental impairment imposing an additional and significant work-related limitation of function." Physical examinations were repeatedly normal, and no source ever placed any functional limitations on the plaintiff due to his headaches. The plaintiff's own testimony was that his attendance at school had been such that he had only missed classes six times in nine months. (Tr. 583). Therefore, the ALJ could reasonably have found that there were no physical limitations proven. The plaintiff also cites the additional diagnosis by Dr. Dummer of a schizoid personality disorder

06-406 Day

with a GAF of 55, but this opinion from a one-time examiner was not entitled to greater weight than the one-time examination by Mr. Pack, and was certainly not confirmed by the treating source at KRCC who gave a GAF of 70.  Therefore, the ALJ could reasonably have concluded that the plaintiff had no additional mental impairment other than mild mental retardation.  The psychiatrist diagnosed depression, personality change after head injury, and intermittent explosive disorder.  The mere diagnosis of conditions is not enough to prove actual functional limitations.  See, e.g., Foster v. Bowen, 853 F.2d 483, 489 (6th Cir. 1988).

    Finally, LOI 12.05D was not met according to the state agency reviewers.  (Tr. 450-80).  Nor does the evidence suggest to a lay reviewer that the plaintiff would have met two of the additional criteria required by 12.05D.

    The decision will be affirmed.

    This the 29th day of June, 2007.



Signed By:
*G. Wix Unthank*
**United States Senior Judge**